UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | **Case No. 8:23-cv-00796** |
| OFFICE OF THE ATTORNEY GENERAL STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS, | **DEFENDANTS' AMENDED MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW** |
| Plaintiffs, | |
| v. | |
| GLOBAL E-TRADING, LLC, a Florida limited liability company, also d/b/a CHARGEBACKS911, | |
| GARY CARDONE, individually and as an officer of GLOBAL E-TRADING, LLC, and | |
| MONICA EATON, individually and as an officer of GLOBAL E-TRADING, LLC, | |
| Defendants. | |

## PRELIMINARY STATEMENT

The Federal Trade Commission ("FTC") alleges that Global E-Trading, LLC, d/b/a Chargebacks911 ("Cb911") violated 15 U.S.C. § 45(a) by engaging in "unfair or deceptive acts or practices in or affecting commerce."  Compl. ¶ 97.  The Florida Attorney General ("Florida AG," together with the FTC, "Government Plaintiffs") joins in the Complaint, alleging that Cb911 also violated the Florida Deceptive and

Unfair Trade Practices Act ("FDUTPA") by engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1); Compl. ¶ 109. Both plaintiffs assert the same claims against co-founders Gary Cardone and Monica Eaton (together with Cb911, "Defendants") in their individual capacities.

Defendants move to dismiss the FTC and Florida AG's claims because Government Plaintiffs do not adequately allege *any* required element of their claims. Instead, they merely recite elements and allege conclusory allegations. *See* Compl. ¶¶ 95, 99, 108, 127, 145. But this does not meet the standard for a complaint to survive a Rule 12(b)(6) motion in federal court. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Indeed, the failure to adequately plead any one of the elements (much less all of them) is grounds for dismissal. *See Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 U.S. Dist. LEXIS 110464, at *11 (M.D. Fla. Nov. 23, 2009) ("To sufficiently plead a claim, Plaintiff [] must allege facts which plausibly establish each element of the cause of action").

Additionally, the Complaint points only to conduct from more than four years ago, making no serious effort at showing any risk of future harm, disqualifying Government Plaintiffs' request for injunctive relief.

Finally, the FDUTPA claims should also be dismissed because they are barred by the four-year statute of limitations and cover conduct that is explicitly excluded

from FDUTPA under the Banking Activity Exception.

Accordingly, the Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

When a consumer sees a charge on her credit card that she believes is fraudulent or that she does not remember, she may dispute the charge by seeking what is commonly known as a "chargeback." Compl. ¶ 18. When the cardholder's "issuing bank" (the bank that issued the card to the cardholder) receives the chargeback request, it credits her account and transmits a notice of the chargeback to the "acquiring bank" (the bank that receives payments on behalf of the merchant receiving the chargeback request). *Id.* at ¶ 19. The merchant involved in the disputed transaction has an opportunity to dispute the consumer's chargeback. *Id.* at ¶ 3. If the merchant decides to challenge the chargeback, it makes a document submission called a "representment" to the issuing bank. *Id.* at ¶ 19.

If the issuing bank (i.e., the cardholder's bank) decides that the charge was invalid, it may recover the chargeback amount from the acquiring bank, which, in turn, collects the chargeback amount from the merchant.[1] *Id.* If the issuing bank decides that the charge was valid, it debits the consumer's account for that amount. *Id.* If the merchant or consumer disagrees with the decision, the chargeback may be

---

[1] Because the cardholder was credited for the charge by the issuing bank at the time of the chargeback request, nothing additional happens with regard to the cardholder in this instance.

escalated to additional stages of dispute resolution. *Id.* Cb911 does not have any say in the decision; rather, this process and the ultimate determination are in the hands of federally regulated banks that are governed by financial institution regulations and card association rules.

Cb911 offers chargeback response services to merchants where it helps compile and submit representations on behalf of those merchants. *Id.* at ¶¶ 21, 28. When preparing a chargeback dispute, Cb911 has gathered data from the merchant concerning the product at issue. *Id.* at ¶ 43. The representation may include representative images of the merchant's website, *id.* at ¶ 29, that were collected from the URL that the merchant registered with its acquiring bank when the merchant applied for credit card processing, *id.* at ¶ 32. Cb911 may also provide text boxes and overlays on those images to emphasize information that may be relevant to the chargeback. *Id.* at ¶ 33.

When onboarding a new client, Cb911's typical practice has been to create a "test" representation as a template, which Cb911 then scrutinizes for accuracy. *Id.* at ¶ 46. Cb911 also conducts an initial threat assessment during which Cb911 checks various aspects of the client's sales process, including its websites, confirmation emails, and customer service numbers for, among other things, disclosures and checkboxes related to the client's offering. *Id.* at ¶ 54.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "more than a *sheer possibility* that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (emphasis added). The plaintiff is obligated to provide the "grounds" for his entitlement to relief and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65). Indeed, the Supreme Court has made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 662. The failure to sufficiently plead any one of the required elements of a cause of action is grounds for dismissal. *See Hodge*, 2009 U.S. Dist. LEXIS 110464, at *11.

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983). However, the Court should not assume that the plaintiff can prove facts that were not alleged. *Id*.

## ARGUMENT

**I.    Government Plaintiffs Have Not Adequately Pled an "Unfair Act" Under Either the FTC ACT or FDUTPA.**

"Under Section 5 of the FTC Act, an act or practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1393 (M.D. Fla. 2018) (citing 15 U.S.C. § 45(n)).  Under FDUTPA, an act is similarly unfair if "it causes consumer injury that is substantial, not outweighed by any countervailing benefits to consumers or competition, and one that consumers themselves could not have reasonably avoided." *Altor Locks, LLC v. Proven Indus., Inc.*, No. 8:22-cv-597-MSS-TGW, 2022 U.S. Dist. LEXIS 233502, at *8–9 (M.D. Fla. Oct. 18, 2022) (Scriven, J.) (internal quotation marks omitted).[2]  Because the unfairness analysis under the FTC Act and FDUTPA both require (1) causation, (2) substantial injury, and (3) unavoidability, Defendants address the claims together.

As discussed below, Government Plaintiffs have failed to adequately allege any of the three elements.

### A.    Government Plaintiffs have not adequately pled that Cb911 caused consumer harm.

Government Plaintiffs must plead that an alleged unfair act did in fact cause

---

[2] While there is a split among courts as to what constitutes an unfairness claim under the FDUTPA, the Middle District of Florida has consistently applied the same elements that are found in the FTC Act. *See Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 U.S. Dist. LEXIS 176281, at *21 n.9 (M.D. Fla. Aug. 11, 2015); *FTC v. Vylah Tec LLC*, 378 F. Supp. 3d 1134, 1138 (M.D. Fla. 2019); *FTC v. Alcoholism Cure Corp.*, No. 3:10-cv-266-J-34JBT, 2011 U.S. Dist. LEXIS 155574, *17 (M.D. Fla. Dec. 5, 2011).

consumer harm. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 U.S. Dist. LEXIS 24920, at *48 (M.D. Fla. Feb. 15, 2018) (dismissing claim for failure to "allege any facts supporting a plausible inference that any consumers have or are likely to have suffered damages"); *Ferrara v. LCS Fin. Servs. Corp.*, No. 8:14-cv-2450-T-30AEP, 2015 U.S. Dist. LEXIS 1448, *7 (M.D. Fla. Jan. 7, 2015) (dismissing FDUTPA claim for failure to include "allegations of causation connecting [the Defendant's] actions to any alleged damages"); *Hill Dermaceuticals, Inc. v. Anthem, Inc*., 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) ("Importantly, a practice is not unfair unless a consumer was actually aggrieved by the act or practice.").

Similarly, merely "recit[ing]" the element of causation is insufficient. *FTC v. Lendingclub Corp*., No. 18-cv-02454-JSC, 2018 U.S. Dist. LEXIS 246585, at *34 (N.D. Cal. Oct. 3, 2018) ("Absent sufficient facts alleging substantial injury, the FTC's unfairness claim must fail"); *see Freda v. Ginn-LA Pine Island Ltd., LLLP*, No. 6:08-cv-691-Orl-35GJK, 2009 WL 10670302, at *5, *14 (M.D. Fla. Oct. 27, 2009) (Scriven, J.) (finding that plaintiffs failed to allege in non-conclusory terms that Defendant's practices were deceptive and caused the Plaintiffs to be misled).

Here, Government Plaintiffs have failed to allege that Cb911 *caused or will cause* any consumer harm (as opposed to the fraudulent merchants that the Complaint discusses and against which the FTC has already brought enforcement

actions).  To prevail, Government Plaintiffs must plead (and later demonstrate) that Cb911's actions were independently injurious to the consumers who were allegedly harmed.  *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1156 (9th Cir. 2010) (noting that defendant's actions were independently injurious to the consumer because the fraudulent business was "made possible only through the operator's software").

> 1.    Government Plaintiffs Fail To Adequately Plead Causation with regard to the Cb911's Representation Packages.

Not only do Government Plaintiffs not plead independent causation, they do not plausibly allege any causation related to the chargeback process or to Cb911's role in that process.  They do not identify a single customer who was wrongfully denied a chargeback to which the customer was entitled; nor do they present a single example where Cb911 did something in the chargeback process that caused a customer to be denied a chargeback.  Instead, the Complaint generally alleges that "[c]ustomers of [Apex Capital, AH Media, and F9 Advertising] reported that they had signed up for a free trial offer and were charged for an ongoing subscription without their knowledge or consent."  Compl. ¶ 26.  But the Complaint does not allege, nor could it, that *that* conduct had anything to do with Cb911, which only became involved once there was a chargeback dispute. And with regard to chargeback disputes, there are no allegations that any of those customers were unsuccessful in disputing chargebacks—much less that the reason for the rejection was a purportedly misleading representation *by Cb911*.  To be clear, Government

Plaintiffs do not allege that there was a single chargeback that was wrongfully denied much less one that was wrongfully denied *because of Cb911* (as opposed to an error by an issuing or acquiring bank or the consumer, or because of fraud by a merchant).

Government Plaintiffs' pleading failures with regard to causation go a step further. Because of the reviewing role of issuing banks, Government Plaintiffs need to plead and eventually prove that Cb911's alleged bad acts were the cause of the issuing banks' denial of the chargeback. There are no such allegations in the Complaint, nor any allegation of Cb911 being in a position to cause such a denial. Rather Government Plaintiffs show a snippet of a document from a test represent that Cb911 conducted during a threat assessment done when onboarding a new client, AH Media, as an example of the type of call-outs that Cb911 would add to represent packages. Compl. Fig. F. Exhibit A to this motion includes the whole page from which the Government Plaintiffs excerpted Figure F and a second version of the same page (both of which were produced to the Government Plaintiffs by Cb911). Exhibit A reveals that Cb911 identified inconsistencies in the AH Media package when onboarding AH Media and took proactive steps to correct those issues and inconsistencies.[3] Exhibit A even shows

---

[3] "In deciding whether a complaint states a claim upon which relief may be granted, [the court] normally consider[s] all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). "Under the doctrine of incorporation by reference, [the court] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of

that Cb911 confirmed with AH Media that it corrected the inconsistencies.  That AH Media deceived Cb911 completely destroys the potential of a causal link between Cb911 and the consumer.

It is no surprise that Government Plaintiffs have been unable to generate a complaint with plausible allegations of causation: Cb911 is a conduit that largely provides a clerical service.  The merchant—not Cb911—provides the evidence for each representation.  Compl. ¶ 28.  The graphic below helps illustrate the relationship of Cb911 to the banks, merchants, and consumers.  It also highlights the causation issues that Government Plaintiffs' Complaint does not attempt to overcome.



---

undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *See Pitts v. Grant*, 2022 U.S. App. LEXIS 10081, at *3 n.1 (11th Cir. Apr. 14, 2022) (considering documents the defendant attached to his motion because "[plaintiff] quote[d] [the documents] extensively throughout his complaint. . . [and did] not dispute[] their veracity.").

As this chart shows, there is no direct causal relationship between Cb911 and any consumer nor do Government Plaintiffs allege any.  Because of Cb911's lack of causal relationship with consumers, to establish causation Government Plaintiffs would need to plead and eventually prove that (a) consumers did not receive reimbursements on valid chargebacks (we discuss substantiality below), (b) the issuing bank's decision was based on an unfair or deceptive representation package, and (c) the portion of the representation package that was determinative was created by or unfairly included by Cb911.  Government Plaintiffs allege none of this.

       2.     <u>Government Plaintiffs Fail To Adequately Plead Causation with regard to Value Added Promotions.</u>

As for the allegations related to "Value Added Promotions" (or "VAP"), the purported harm to consumers is that VAP increased the likelihood that bad actor merchants would evade card networks' fraud monitoring programs, which in turn would allow those merchants to continue their predatory negative option subscription services.  Compl. ¶ 99.  This theory presents an even more attenuated relationship between the alleged conduct by Cb911 and any consumer harm "caused" by a misleading representation.

The only client named in this section of the Complaint is Apex, yet there is no allegation that VAP lowered Apex's chargeback rates or that a lowered chargeback rate, via VAP, allowed any Apex entity to stay in business or to process additional credit card transactions.  Since there are no allegations of such additional

transactions, there are not (nor can there be) any allegations that there were fraudulent additional transactions, that Cb911 knew of such fraudulent additional transactions, or that any consumer was unsuccessful in seeking a chargeback for a fraudulent additional transaction.

Not only does the Complaint not assert a causal relationship, it alleges facts inconsistent with a causal link. For example, Paragraph 69 alleges that fraudulent merchants frequently open new merchant accounts to replace accounts that have been closed and conduct sales though a large number of accounts to maintain access to payment processing as their accounts are closed. This is directionally inconsistent with the idea that a VAP-lowered chargeback rate would have led to new fraudulent transactions. As Government Plaintiffs acknowledge, merchants are able to conduct additional (potentially fraudulent) transactions because they use numerous different corporate entities to open merchant accounts to prevent acquiring banks from linking the accounts to the fraudulent merchant. *Id.* at ¶¶ 69; 71.

In any event, Government Plaintiffs do not allege that any fraudulent transactions were generated because of VAP. As such, Government Plaintiffs have failed to allege that Cb911 caused any consumer harm through its VAP sales.

**B.    Government Plaintiffs have not adequately pled that any injury to consumers was "substantial."**

While the absence of any identified consumer harm *caused* by Cb911 is enough to render the Complaint deficient under *Twombly* and *Iqbal*, the Complaint

fails for other reasons as well. For instance, even if Government Plaintiffs *had* identified a harmed consumer (they have not), that would be insufficient to meet their pleading burden because both consumer protection statutes require that a plaintiff plausibly allege "substantial" consumer harm.

The "substantial injury" inquiry for unfairness claims usually involves "actual or completed" harms to the consumer. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 246 (3d Cir. 2015) (quoting *In re Int'l Harvester Co.*, 104 F.T.C. 949 (Dec. 21, 1984)). "In most cases, substantial injury would involve monetary or economic harm[.]" *Roca Labs, Inc.*, 345 F. Supp. 3d at 1395 (citing S. Rep. No. 103-130, at 13, 1993 WL 322671 (1993)). The Eleventh Circuit confirmed this in *LabMD, Inc. v. FTC* when it found that the FTC Act "is not concerned with . . . merely speculative harms" and that "[i]n most cases a substantial injury involves monetary harm" or "[u]nwarranted health and safety risks." 678 F. App'x 816, 820 (11th Cir. 2016) (quoting 1980 Policy Statement).

Comparing the Complaint to past FTC complaints that survived motions to dismiss exposes how threadbare the allegations are in this case. For instance, in *Wyndham Worldwide Corp.*, the court found that the substantial injury prong was adequately pled because the FTC alleged that "in total, the hackers obtained payment card information from over 619,000 consumers, which (as noted) resulted in at least $10.6 million in fraud loss." 799 F.3d at 241. Similarly, in *Neovi* the district court

found that the substantial harm element was met based on the concrete and quantifiable finding that more than half of the total value of all the checks drawn came from accounts later frozen for fraud.  604 F.3d at 1156.

Here, the Complaint is even more bereft of "substantial harm" allegations than past cases where the FTC was found to have failed to allege adequate harm.  For instance, in *Lendingclub* the court found that the FTC's generalized allegations that Defendant's unauthorized charges resulted in "many consumers [being] forced to pay overdraft fees" was insufficient to support the substantial injury element.  2018 U.S. Dist. LEXIS 246585, at *37.  The court in that case found that the complaint did not allege how many customers were harmed or "provide even a rough approximation" and the allegation of "numerous" unauthorized charges did not "rise to a plausible inference that [Defendant's] unauthorized withdrawals [] inflicted many small individual injuries on a large number of consumers."  *Id*.

The FTC's Complaint in this case suffers from the same deficiencies (and worse) that were in the *Lendingclub* complaint.  Government Plaintiffs do not plead actual harm in any quantified way or even attempt to discuss how the alleged practices resulted in "substantial" harm.  The term "substantial" is simply used to recite the elements.  *See* Compl. ¶¶ 96, 99, 107, 108, 112, 125, 127, 143, 145, 150. In case there is any doubt, a chargeback does not mean a consumer was harmed.  The filing of a chargeback is not consumer injury; it is the opposite—it is a consumer

14

trying to avoid harm (where the chargeback is warranted). Thus, the statistics in the Complaint about the number of chargebacks that the three Cb911 customers had have nothing to do with quantifying alleged harm.

In sum, the Complaint does not allege or estimate the number of chargebacks that consumers lost or the average price of the underlying disputes.  And, as discussed above, the Complaint never ties or even attempts to tie a consumer losing a legitimate chargeback dispute to Cb911 much less enough such events that there could be substantial harm to consumers. In short, Government Plaintiffs do not make any allegations, much less plausible ones, from which this Court could conclude that they have alleged "substantial" consumer harm, as required for each of their claims.

### C.    Government Plaintiffs have not adequately "pled harm that consumers cannot reasonably avoid themselves."

As mentioned above, Government Plaintiffs must also plead and prove that consumers could not have reasonably avoided the alleged harm.  In other words, neither the FTC Act nor the FDUTPA create liability where the potentially aggrieved "consumers had a free and informed choice that would have enabled them to avoid the unfair practice." *FTC v. FleetCor Techs., Inc*., No. 1:19-cv-5727-AT, 2022 U.S. Dist. LEXIS 142053, at *86 (N.D. Ga. Aug. 9, 2022) (quoting *FTC v. Windward Mktg*., No. 1:96-cv-615-FMH, 1997 U.S. Dist. LEXIS 17114, at *11 (N.D. Ga. Sept. 30, 2017)).  "Consumers may act to avoid injury before it occurs if they have reason to anticipate the impending harm and the means to avoid it, or they may seek to

mitigate the damage afterward if they are aware of potential avenues toward that end." *In re Orkin Exterminating Co., Inc.*, 108 F.T.C. 263, 366 (Dec. 15, 1986). Where this is true, the FTC Act and FDUTPA do not apply.

Here again, Government Plaintiffs merely recite this element in their Complaint, *see* Compl. ¶¶ 94, 96, 99, 108, 127, 145, but do not otherwise provide any allegations whatsoever, much less plausible ones, that consumers could not reasonably have avoided wrongful denials of their chargebacks (putting aside that they do not allege that there were any specific instances of wrongful denials of chargebacks). *See Casey*, 2015 U.S. Dist. LEXIS 176281 (rejecting plaintiffs' unfairness claim based on misleading post-graduation employment survey data where alternative data was available to the consumer). Government Plaintiffs simply conclude, without explanation, that consumers could not and cannot reasonably avoid the alleged harm. *See* Compl. ¶¶ 96, 99, 108, 127, 145.

The Complaint itself reveals, however, that consumers can reasonably avoid the "harm" of being denied a chargeback. If the issuing bank reviews the representment and resolves the case in the merchant's favor, it provides the cardholder the opportunity to review the representment. "If the . . . consumer disagree[s] with the issuing bank's decision [to reject her chargeback request], the chargeback may be escalated to additional stages of dispute resolution." Compl. ¶ 19. As such, the consumer can mitigate any purported injuries by continuing the

chargeback dispute procedure.[4]  Nowhere do Government Plaintiffs allege any facts or details suggesting that the notice from the issuing bank is ineffective or that the process is ineffective, practically unavailable to the consumer, or weighted in favor of merchants.  Put simply, Government Plaintiffs have failed to allege any facts to support a claim that customers could not reasonably avoid the alleged harm.

### D.    Government Plaintiffs have not adequately pled harm that is "not outweighed by countervailing benefits to consumers."

In considering unfairness claims, courts are to assess whether the purported unfair act had any countervailing benefits that justify the potential harm to consumers or competition.  15 U.S.C. § 45(n).  Under this prong, Government Plaintiffs must allege that "a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition."  *FleetCor Techs., Inc.*, 2022 U.S. Dist. LEXIS 142053, at *116 (quoting *FTC v. Amazon.com*, No. C14-1038-JCC, 2016 WL 10654030, at *11 (W.D. Wash. July 22, 2016)); *see also Roca Labs, Inc.*, 345 F. Supp. 3d at 1375.

Government Plaintiffs again address this element in a passing, conclusory fashion without alleging any facts supporting the idea that there are no

---

[4] Recall that the consumer in this scenario has already engaged with the issuing bank once in requesting the chargeback and is, thus, not a random consumer uninterested in or unaware of the chargeback process.

countervailing benefits that outweigh the alleged harm. The absence of any such alleged facts is another reason for dismissal. Nor can the FTC's failure be remedied. Cb911 provides a service in the payment space by helping businesses manage and respond to chargebacks; it follows the guidelines, processes and methodologies established and governed by the card networks that regulate this space. Compl. ¶ 24. Cb911's services optimize efficiency, help reduce costs, and improve the cadence of chargeback reporting. This decreases business's costs and allows them to either charge less to consumers or to provide better products and services. As for VAP, consumers received *free virtual gift cards*. *Id.* at ¶ 82. Receiving free, valid gift cards with monetary value is clearly a consumer benefit that resulted from the VAP product that Cb911 used to offer. In the absence of any identified consumer harm from VAP, the Complaint's well-pleaded allegations are a one-way street (all benefit, no alleged harm). Indeed, the complaint does not include a single example of a merchant or merchant account being extended due to the use of VAP.

Accordingly, Government Plaintiffs have failed to make plausible allegations that Cb911 caused harm that was not outweighed by a countervailing benefit.

## II.   Government Plaintiffs Do Not Make Allegations on Which the Court Could Grant Injunctive Relief Because They Do Not Allege Any Future Harm.

Government Plaintiffs' claim for equitable and injunctive relief fails because they have not adequately alleged that consumers are likely to be harmed by Cb911's

alleged conduct in the future.  In federal court, "[a] showing of irreparable injury is the *sine qua non* of injunctive relief."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  "A plaintiff must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue."  *Nivel Parts & Mfg. Co., LLC v. Textron*, Inc., No. 3:17-cv-146-J-32JRK, 2017 WL 1552034, at *1 (M.D. Fla. May 1, 2017).  A "[s]peculative injury is not sufficient," and "there must be more than an unfounded fear on the part of the applicant."  *Id.*  In other words, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent."  *Siegel*, 234 F.3d at 1176–77 (citing *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)).

Similarly, Section 13(b) of the FTC Act "contemplates only 'relief that is prospective, not retrospective.'"  *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 59 (D.D.C. 2022) (quoting *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021)); *see FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 774 (7th Cir. 2019) ("Section 13(b) serves a . . . forward-facing role: enjoining ongoing and imminent future violations.").  It "does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation."  *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019).

Government Plaintiffs point to conduct that occurred between 2013 and 2019

and claim that this conduct "likely resulted in consumers being denied chargebacks." Compl. ¶ 5. As discussed above, the Complaint does not adequately allege that past consumer harm. Even if it had, the four-year-old conduct described in the Complaint combined with the bare allegation that the conduct has "continued" does not illustrate a threat of imminent, irreparable harm in the future (especially given that Government Plaintiffs have been investigating Cb911, including subpoenaing documents and testimony since 2020). Moreover, by Government Plaintiffs' own admission, Cb911 has not employed VAP since 2019. Compl. ¶ 6. Plaintiffs do not offer any facts to suggest that Cb911 still engages in VAP (nor does it).

As the FTC was recently reminded in *FTC v. Facebook, Inc.*, there is no basis under common law for an injunction for harm that occurred only in the past: "[T]he temporal gap [of four years] between the complained-of conduct and this lawsuit is fatal to the agency's claim for injunctive relief under Section 13(b) here because it means that no actionable violation is either ongoing or about to occur." 581 F. Supp. 3d at 59. The same is true here—there is a four-year temporal gap—and the Court should dismiss the Complaint's request for forward-looking injunctive relief.

## III. The Florida AG's FDUTPA Claims Suffer Additional Deficiencies.

### A. The FDUTPA claims are barred by statute of limitations.

The statute of limitations for a FDUTPA claim is four years. *See* Fla. Stat. § 95.11(3)(f). A Rule 12(b)(6) dismissal on statute of limitations grounds is

appropriate if it is "apparent from the face of the Complaint that the claim is time-barred." *Sewell v. D'Alessandro & Woodyard*, 655 F. Supp. 2d 1228, 1241 (M.D. Fla. 2009) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) and dismissing the complaint accordingly).

Because the Florida AG filed this Complaint on April 12, 2023, anything that occurred prior to April 12, 2019, is not actionable under FDUTPA. *Martin v. World Wide Child Care Corp.*, No. 9:17-cv-80188-ROSENBERG/BRANNON, 2017 U.S. Dist. LEXIS 199033, at *10–11 (S.D. Fla. Dec. 1, 2017) (finding that the limitations period began to run after the latest purchase of the shares occurred in 2012); *see also Ellerbee v. Ethicon, Inc*., No. 8:20-cv-1514-T-60AEP, 2020 U.S. Dist. LEXIS 160130, at *11–12 (M.D. Fla. Sep. 2, 2020) ("Under FDUTPA, the limitations period begins to run when the product is purchased.  Therefore, the limitation period began to run no later than the date of Ms. Ellerbee's surgery in 2006.").

While the Florida AG makes conclusory statements that Cb911 has "continued to dispute chargebacks . . . using misleading Representment Screenshots," Compl. ¶ 59, every specific allegation, example, and incident in the Complaint is time-barred. *See* Compl. ¶¶ 6 (2013-2019); 27 (January 2016-November 2018; January 2017-July 2019; and September 2016-January 2018); 50 (January 2017-August 2018); 52 (April 2016); 55-56 (December 2016); 60 (November 2018); 63 (February 2019); 64 (February 2016-August 2017); 66 (February 2016-August 2017); 72 (January

21

2016-July 2018; January 2017-January 2018; February 2017-April 2019); 73 (April 2017-March 2019); 74 (October 2015-September 2018); 77 (2016-2017); 79 (2013-2019).  This is so despite having the benefit of discovery, subpoena power over the Defendants, and an investigation that has lasted for years.  Compl. ¶ 11 ("The Florida Attorney General has conducted an investigation of the matters alleged herein.").

The Complaint includes not one act that occurred during the statute of limitations period; therefore, Counts III and IV are barred by the statute of limitations, as is evident from the face of the Complaint, and should be dismissed.[5]

### B.    The Florida AG seeks relief under FDUTPA for conduct that is explicitly excluded under the Banking Activity Exemption.

FDUTPA excludes from civil liability "[a]ny person **or activity** regulated under laws administered by . . . Banks [that are] regulated by the Office of Financial Regulation of the Financial Services Commission [or] regulated by federal agencies."  Fla. Stat. § 501.212(4)(b)(c) (emphasis added).  "The disjunctive 'or' in section 501.212(4) indicates that there are two separate and distinct exclusions from liability under FDUTPA—either 'persons' regulated under laws administered by certain administrative agencies, or 'activities' regulated under the same."  *Farmer v.*

---

[5] Defendants are aware of cases where the Florida courts have struck allegations that were time-barred, but allowed acts alleged to have occurred within the statute of limitations period to proceed.  *See Small v. GM, LLC*, No. 21-81146-CIV-CANNON, 2022 U.S. Dist. LEXIS 93049, at *23 (S.D. Fla. May 24, 2022) (barring aspects of Plaintiff's FDUPTA claim based on the statute of limitations, but leaving as timely Plaintiff's FDUPTA claims arising within the past four years).  Such a result would not work here because there are no examples in the Complaint that are within the statute of limitations period.

*Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022) (Scriven, J.) (citing *CMR Constr. & Roofing, LLC v. Am. Cap. Assurance Corp.*, No. 2:20-cv-00416-JLB-NPM, 2021 WL 354167, at *2 (M.D. Fla. Feb. 2, 2021)). Florida courts resolve questions about the applicability of section 501.212(4) by looking to the activity that is the subject of the lawsuit and determining whether the activity is subject to the regulatory authority of federally regulated Banks. *See State v. Beach Blvd Auto. Fin., Inc.*, 139 So. 3d 380 (Fla. 1st DCA 2014).

As a result, Cb911 is engaged in an activity that is exempt from FDUTPA. The chargeback process is handled by federally regulated banks that are governed by financial institution regulations and card associations' rules. Indeed, the chargeback mechanism was created by the Fair Credit Billing Act of 1974, 15 U.S.C. § 1601 et seq. (enforcing federal regulations are found in 12 C.F.R. § 1026.13(b)(1)). Under this mechanism, the issuing and acquiring banks, which are both regulated and licensed financial institutions, are responsible for analyzing and ruling on representments, whether presented directly by a merchant or through a third party provider like Cb911. These regulated banks also facilitate chargeback credits and debits to consumers. In doing so, these regulated banks administer the chargeback process in accordance with federal laws making chargebacks an "activity" covered by Fla. Stat. § 501.212(4)(b)(c) and explicitly exempted by the statute.

## <u>CONCLUSION</u>

Government Plaintiffs have failed to adequately plead every single necessary element.  Each such failure is grounds for dismissal.  Government Plaintiffs have also failed to adequately allege any forward-looking harm that can be remedied by injunctive relief.  The Florida AG's claims are also time-barred and dismissible because they pertain to conduct explicitly exempted by Fla. Stat. § 501.212(4)(b)(c).  Notably the FTC and Florida AG have been investigating Defendants for years, and the FTC has investigated and brought cases against the three clients discussed in the Complaint.  *See generally FTC v. Apex Capital Group, LLC*, Case No. CV 18-8573 (C.D. Cal.) (Complaint [Doc. 1] filed November 13, 2018; Stipulated Order for Permanent Injunction and Monetary Judgment [Doc. 142] filed January 15, 2020); *FTC v. F9 Advertising*, Case No. 3:19-cv-01174 (D. Puerto Rico) (Complaint [Doc. 1] filed February 21, 2019); *FTC v. AH Media Group*, Cas No. 19-cv-4022 (N.D. Cal.) (Complaint [Doc. 1] filed July 12, 2019; Stipulated Order for Permanent Injunction and Monetary Judgment [Doc. 111] entered March 6, 2020).  Because Government Plaintiffs have already enjoyed the benefit of years of discovery and investigation, allowing them to amend would be futile.  For the reasons stated herein, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that

communication regarding this Motion was made with opposing counsel and that

opposing counsel does not consent to the relief sought herein.

Dated: June 29, 2023.          Respectfully submitted,

/s/ Corey W. Roush
Corey Roush (admitted pro hac)
**AKIN GUMP STRAUSS HAUER &FELD LLP**
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4115
croush@akingump.com

/s/ William J. Schifino, Jr.
William Schifino, Jr., Esq., Fl. Bar No. 564338
Justin P. Bennett, Esq., Fl. Bar No. 112833
Gregory L. Pierson, Esq., Fl. Bar No. 123905
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Primary email: wschifino@gunster.com

## CERTIFICATE OF SERVICE

I certify that on June 29, 2023, the foregoing was electronically filed with

the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

/s/ William J. Schifino, Jr.
Attorney

25